**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**


| | |
|---|---|
| DARYL W. PHILLIPS,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | Civil Action |
| vs.  ) | No. 09-3335-CV-S-JCE-SSA |
| ) | |
| MICHAEL J. ASTRUE,  ) | |
| Commissioner of Social Security,  ) | |
| ) | |
| Defendant.  ) | |


## O R D E R

Plaintiff is appealing the final decision of the Secretary denying his application for

disability insurance benefits ["DIB"] under Title II of the Social Security Act, 42 U.S.C. § § 401,

et seq., and his application for supplemental security income benefits ["SSI"] under Title XVI of

the Act, 42 U.S.C. §§ 1381 et seq.  Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3),  this Court

may review the final decisions of the Secretary.  For the following reasons, the Secretary's

decision will be affirmed.


### Standard of Review

Judicial review of a disability determination is limited to whether there is substantial

evidence in the record as a whole to support the Secretary's decision.  42 U.S.C. § 405(g); e.g.,

Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991).  Substantial evidence is "'such

evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson

v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197,

229 (1938)).  Thus, if it is possible to draw two inconsistent positions from the evidence and one

position represents the Agency's findings, the Court must affirm the decision if it is supported on the record as a whole.  Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A).  Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990).  In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment.  Id.  Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled.  The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions.  Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in Polaski.  The ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they

are inconsistent with the evidence in the record as a whole.  <u>Haynes v. Shalala</u>, 26 F.3d 812, 814 (8th Cir. 1994).

<u>Discussion</u>

Plaintiff, who was 38 years old at the  hearing before the ALJ, has an eighth grade education.   He has past relevant work as a construction worker and as a home health care worker.  In his disability report, he alleged disability due to back, hip, and leg pain, depression, and a behavioral disorder.

The ALJ found that plaintiff  has not engaged in substantial work activity since the alleged onset date of disability, July 1, 2005.  She found that he suffered from spondylolisthesis and degenerative disc disease with radiculopathy; a bipolar disorder; chronic obstructive pulmonary disease; and a history of pneumonia.   It was her finding that plaintiff's impairments did not meet or equal a medically listed impairment.  It was also the ALJ's finding that plaintiff was not fully credible.  It was her opinion that plaintiff was not able to perform his past relevant work , but could perform a limited range of sedentary work.   She found that he had the residual functional capacity ["RFC"] to frequently lift and/or carry five pounds; occasionally lift and/or carry 10 pounds; sit for a total of six to eight hours in an 8-hour workday; stand and/or walk a total of two hours in an 8-hour workday; should avoid climbing and/or exposure to significant unprotected heights; should perform no commercial driving; should avoid exposure to uneven surfaces, and extreme vibrations; should work in areas with climate control and which are reasonably free of environmental irritants; should have access to inhalers as necessary; should be limited to simple repetitive-type job instructions; and should have no customer service duties, although public proximity is acceptable.

According to the testimony of the vocational expert, plaintiff would not be able to perform his past relevant work.  When presented with the RFC derived by the ALJ, the vocational expert testified that there would be jobs plaintiff could perform, including office helper and final assembler.   The ALJ  found, therefore, that plaintiff was not under a disability as defined by the Act.

Plaintiff contends that the ALJ's decision should be reversed because she erred in determining that plaintiff's degenerative disc disease did not meet or equal the requirements of Listing 1.04; that she erred in not finding that plaintiff had a disabling mental condition; and she did not fulfill her duty to develop the record on this issue.

Plaintiff testified at the hearing that he had an eighth grade education.  He had no problem reading the newspaper, writing a short letter, or writing a grocery list.  He drove to the hearing, but whether he drives to do errands or attend appointments depends on whether his back is hurting.  If that is the case, he has his mother or girlfriend drive him.  Since July of 2005, when his doctor told him to rest and take it easy, he has not tried to return to work.  It was Dr. Clarke, a pain management specialist, who told him that. He attended the Spine Clinic at St. John's Hospital in Springfield for a series of four sets of shots, which continued over the past two years, as the shots were given every six months.  Plaintiff stated that at the time of the hearing, he was taking nine different types of medicine, including Cymbalta.  He was taken off Celexa, but was taking other medication for pneumonia, including breathing treatments and inhalers.  Plaintiff stated that he uses an Advair inhaler, and was also using a nebulizer when he had pneumonia, which he might have to use on a regular basis.  He uses it every four hours during the day, and the treatment takes about 15 minutes.  He testified that he was referred to Dr.

Clarke at St. John's Hospital because he injured his back picking up a bundle of shingles. He had previously injured his back when he was a lot younger, but kept working. When he had the second injury, his doctor referred him to a spine specialist. He had an MRI there, as well as the epidural shots. The first set of shots worked fine, and the effect lasted about six to eight weeks. He still had pain, but his leg had stopped going numb for a period of time. After the second set of shots, his legs "instantly [went] back to being numb again." [Tr. 22]. At that point, he stated that Dr. Clarke wanted him to go to a chiropractor and have physical therapy, which he could not afford because Medicaid doesn't pay for either. His doctor never discussed back surgery with him, although he said that there were things they could try before they decided to do surgery.

During the day, he drives his children to school, comes home and lays down, sleeping until noon. After lunch, he watches television, then lies back down again because he is more comfortable lying down. He goes to bed at 9:00 p.m. and sleeps until about 5:00 a.m. He wakes up in pain. He estimated that he spends about six hours during the day lying down. Plaintiff acknowledged that he had had some drinking problems, but stated that he has taken care of them. In terms of hobbies, plaintiff testified that he occasionally plays video games with his children.

Regarding meeting or equaling Listing 1.04, plaintiff has the burden of proof to establish that his impairment meets or equals a listing. Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). A listing is met when an impairment meets all of the listing's specified criteria. Id. at 1070, (citing Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of these criteria, no matter how severely, does not qualify.") The listings were designed to operate as a presumption of disability, which makes further inquiry unnecessary, and therefore, require a higher level of severity, sufficient to prevent an individual from performing any gainful

employment.  Zebley, 493 U.S. at 532.  "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria."  Brown ex rel. Williams v. Barnhart, 388 F.3d 1150, 1152 (8th Cir. 2004) (internal quotations and citation omitted).

A finding that an impairment or combination of impairments does not meet or equal a listing must be based on medical evidence. Shontos v. Barnhart, 328 F.3d 418, 424 (8th Cir.2003) (quoting 20 C.F.R. § 404.1526(a) and (b)).  Additionally, the relevant question is whether the ALJ "consider[ed] evidence of a listed impairment and concluded that there was no showing on the record that the claimant's impairments . . . m[et] or are equivalent to any of the listed impairments."  Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006) (internal quotations omitted).   Even if an ALJ did on elaborate on his conclusion, this does not require reversal where the record supports the overall conclusion.  Id.  at 746.

Plaintiff claims that the ALJ erred in not finding that he met or equaled the full Listing 1.04  because the doctor who read the MRI found foraminal stenosis at L5-S1.  He also notes that the straight leg raising was markedly positive on the left, and submits that the severity of his back impairment was reinforced by Dr. Mauldlin, who stated that further evaluation with a neurosurgeon was recommended to see if plaintiff might be a candidate for a lumbar fusion. Plaintiff contends that this did not occur because the Social Security Administration did not arrange for the neurological evaluation.  He also stressed that Dr. Clarke found that he walked with a limp on the left, and that his range of motion of the lumbar spine was markedly limited due to pain.  Thus, it is plaintiff's position that his degenerative disc disease, coupled with his positive straight leg raising on the left side, should have led to finding of a disability under the Listings.

The record indicates that plaintiff has a history of spondylolisthesis. In 2006, he complained of hip pain, and was diagnosed with sciatica. Upon examination, it was noted that he had normal reflexes and no motor or sensory deficits. He complained of back pain and left leg pain, and was prescribed pain medication and a muscle relaxant. When referred to a pain clinic, Dr. Clarke noted markedly positive straight leg raising on the left and negative on the left. He also noted that plaintiff's gait was antalgic on the left; his strength testing was normal for the lower extremities; and his range of motion of the lumbar spine was limited. An MRI in 2006 diagnosed grade 1 spondylolisthesis and foraminal stenosis. Dr. Clarke noted that his muscle strength was normal in his legs, and he advised the doctor that he exercised daily and lifted weights weekly. The doctor administered an epidural steroid injection, and advised plaintiff not to lift more than 25 pounds. Dr. Clarke administered two additional injections, and plaintiff reported each time that his back pain was greatly improved. He did not show up for a third steroid injection, and was cancelled. Plaintiff continued to report back pain and numbness, and was prescribed pain medication. In 2007, Dr. Maudlin, performed a consultative physical examination of plaintiff for the Division of Family Services. Plaintiff provided a history of back pain from two separate accidents. He indicated that injections had temporarily helped, but that he did not follow up for further treatment after his pain recurred, and was not taking any pain medication. The doctor noted that plaintiff's left leg was slightly shorter than his right, and that there might be some instability present, which would warrant further evaluation with a neurosurgeon. The physician also found plaintiff credible regarding his spinal problems and complaints of pain, but nevertheless, found that he "should still be able to lift 20 pounds occasionally, less than 10 pounds frequently, but may need to limit his standing and walking to 2

hours in an 8-hour day with normal breaks.  He should still be able to sit up to 6 hours in an 8-hour day with normal breaks." [Tr. 183].  The doctor observed that plaintiff's condition had not worsened since the last MRI in April of 2006.

Turning to the issue of whether plaintiff's degenerative disc disease met or equaled a listed impairment, the ALJ concluded that it did not because "his impairment is not an impairment that has reached the required level of severity." [Tr. 252].   She found that the requirements of the listing were not met because the medical records did not establish adequate signs or symptoms of pain distribution, limitation of motion, sensory loss, and positive straight leg raising.  She also stated that the record did not establish the need to alter position, pseudo-claudication, and other functional limitations, such as the inability to ambulate effectively, or motor loss accompanied by sensory or reflex loss.  She reviewed the medical records in reaching her decision, and noted that three views of plaintiff's spine in 2007 showed similar results as in 2006.

The law is clear that the standard is high to establish that a listed impairment is met or equaled, and that a plaintiff has the burden of proof to establish that he meets all of the specified medical criteria.   After careful review, the Court finds that the ALJ did not err in her decision.  This is not a case where the ALJ did not elaborate on her conclusions, but even if it were, the record supports her overall conclusion.   The medical records as a whole support her conclusion that plaintiff did not have the clinical findings to meet or equal a listed impairment because of his back.  While the record indicates that his complaints of pain are credible, it is noteworthy that plaintiff was not on prescription pain medication, other than Ibuprofen, when he was examined in November of 2007. [Tr. 181].  Additionally, other than a limp, he had no problems

ambulating, and did not exhibit sensory or motor loss.  It is apparent, additionally, that a positive straight leg raise test is only a small part of what is needed to meet the Listing.  Based on a full review of the record, this Court finds that the ALJ's findings that plaintiff did not meet or equal the requirements of Listing 1.04 is supported by substantial evidence.

Regarding his mental impairment, while having been diagnosed with a bipolar disorder and prescribed medication for that, there is nothing in the record to suggest that plaintiff's mental condition is wholly disabling. While he may have been assessed with a GAF of 31 at one time, he has not presented a history of low GAF scores, indicating that he was at this level on several occasions.   Additionally, the law is clear that "an ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it."  Hudson ex rel. v. Barnhart, 345 F.3d 661, 666 (8th Cir. 2003) (the GAF rating may not reflect current abilities).  Based on a full review of the record, the Court finds that there is substantial evidence to support the ALJ's conclusion that plaintiff does not suffer from a disabling mental condition, and there was no need to more fully develop the record on that issue.

A review of the record also indicates that the ALJ properly considered all of plaintiff's impairments in assessing the RFC.  A review of the RFC, which delineates functional and nonfunctional limitations, indicates that the ALJ took into consideration the credible, medically supported evidence in the record to assess plaintiff's RFC.  She found that plaintiff suffered from degenerative disc disease with radiculopathy; a bipolar disorder; chronic obstructive pulmonary disease; and a history of pneumonia, which were severe impairments, and considered these in her RFC finding.  There is substantial evidence in the record to support the ALJ's determination

that plaintiff's impairments did not meet or equal the requirements of a listed impairment, and to support the RFC determination.

Based on the record before it, the Court finds that the ALJ's decision that plaintiff could perform a limited range of sedentary work is supported by substantial evidence in the record as a whole.  Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir.  2006).    Accordingly, the decision of the Secretary should be affirmed.

It is hereby

ORDERED that the decision of the Secretary should be, and it is hereby, affirmed.

/s/ James C. England
 JAMES C. ENGLAND
United States Magistrate Judge

Date:   September 3, 2010